**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**REGION IV MENTAL HEALTH SERVICES**                                 **PLAINTIFF**

**v.**                                                               **NO. 3:26-CV-12-RPC-JMV**

**UNITED STATES OF AMERICA**                                         **DEFENDANT**

**MEMORANDUM OPINION**

On January 15, 2026, Region IV Mental Health Services (Region IV) filed a Complaint [1] against the United States, alleging that the IRS improperly denied several refund claims. The United States now brings this Motion to Dismiss [15] the Complaint [1]. Region IV's Complaint alleges that it was eligible for Employee Retention Credits (ERCs) and that the IRS improperly disallowed its claims for a refund of those credits during the first (Q1), second (Q2), and third (Q3) quarters of 2021. Region IV also asks the Court to enter a judgment that Region IV may keep the ERC that the IRS has refunded, and subsequently disallowed, for Q2 of 2021. The Court has reviewed the parties' respective filings and the relevant law. For the reasons set forth in this Memorandum Opinion, the Court **GRANTS IN PART AND DENIES IN PART** the Motion to Dismiss [15].

### *Relevant Background*

Following the outbreak of COVID-19, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (CARES Act). Pub. L. 116-136. 134 Stat. 281 (2020). Specific to the controversy currently before this Court is the Employee Retention Credit provision of the CARES Act, which provided a refundable tax credit for employment taxes equal to fifty percent of the qualified wages of employees for each applicable tax quarter. *Id.* § 2301(a). On October 24, 2022, Region IV filed refund claims for Q1, Q2, and Q3 of 2021 for the refund of ERCs under the CARES Act [1, Exhibit 1]. In total, for the three quarters, Region IV claimed that it qualified for

1

ERCs in the amount of $5,381,683.35 [1, Exhibit 1; 18]. On June 5, 2023, the IRS issued Region IV an ERC refund for Q2 of 2021 in the amount of $1,990,593.87—which was the amount Region IV claimed for Q2 plus accrued interest. [1, Exhibit 5]. Correspondence from the IRS dated November 17, 2023, informed Region IV that the IRS was reviewing its ERC refund claims for Q1 and Q3 of 2021 [1, Exhibit 6]. Then, in a letter dated November 20, 2023, the IRS informed Region IV that it was reviewing the ERC claims for Q1, Q2, and Q3 of 2021. [1, Exhibit 7].

On April 17, 2024, the IRS sent Region IV a letter disallowing the ERC refund claims for Q1, Q2, and Q3 of 2021. [1, Exhibit 2]. Region IV timely and appropriately protested the disallowance. [1, Exhibit 8]. Region IV claims that the IRS did not directly communicate its final decision, but that the IRS did issue an assessment for Q2 of 2021 in the amount of the refund that Region IV had previously received [1, at pgs. 9-10; 18, at pg. 5]. However, the United States attached two undated letters addressed to Region IV to its Motion to Dismiss [15, Exhibits 4 &, 5], stating that the protest was denied and that the IRS would issue "a Notice and Demand for payment of the tax, penalty, and interest owed" for Q2. Additionally, both letters notified Region IV that it could bring suit in a United States District Court or a United States Court of Federal Claims to challenge the determination of the IRS. [15, Exhibits 4, 5]. Subsequently, Region IV filed the present lawsuit.

### *Standard*

The United States seeks dismissal of Region IV's refund claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject-matter jurisdiction and failure to state a claim. "[A] motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Home*

*Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proving subject matter jurisdiction lies with the party asserting jurisdiction, and it must be proved by a preponderance of the evidence." *In re S. Recycling, L.L.C.*, 982 F.3d 374, 379 (5th Cir. 2020) (citing *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012)). "If a Rule 12(b)(1) motion is filed simultaneously with other motions under Rule 12, the court should consider the Rule 12(b)(1) jurisdictional attack prior to ruling on any attack on the merits." *Gunter v. Bryant*, No. 3:17-cv-177-NBB-RP, 2018 WL 3650244, at \*1 (N.D. Miss. Aug. 1, 2018) (citing *Ramming*, 281 F.3d at 161). "In examining its jurisdiction, the Court is permitted to consider '(1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Patterson v. U.S.*, No. 3:14-cv-247-SA-JMV, 2015 WL 5712008, at \*1 (N.D. Miss. Sep. 29, 2015) (quoting *Clark v. Tarrant Cnty.*, 798 F.2d 736, 741 (5th Cir. 1986)).

"In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citing Fed. R. Civ. P. 12(b)(6)). When considering a motion to dismiss, the court may "also consider '[d]ocuments that a defendant attaches to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to her claim.'" *Sligh v. City of Conroe, Tex.*, 87 F.4th 290, 297 (5th Cir. 2023) (quoting *Villarreal v. Wells Fargo Bank, N.A.*, 84 F.3d 763, 766 (5th Cir. 2016)).

"To survive dismissal under the Rule 12(b)(6) standard, 'a complaint must present enough facts to state a plausible claim to relief. A plaintiff need not provide exhaustive detail to avoid dismissal, but the pleaded facts must allow a reasonable inference that the plaintiff should prevail.'" *Poston v. Wood*, No. 4:24-cv-117-DMB-JMV, 2026 WL 867505 at \*2 (N.D. Miss. Mar.

30, 2026) (quoting ***Mandawala v. Ne. Baptist Hosp.***, 16 F.4th 1144, 1150 (5th Cir. 2021)). The Court "take[s] the well-pled factual allegations of the complaint as true and view[s] them in the light most favorable to the plaintiff." ***Lane v. Halliburton***, 529 F.3d 548, 557 (5th Cir. 2008) (citing ***In re Katrina Canal Breaches Litig.***, 495 F.3d 191, 205 (5th Cir. 2007)).

*Discussion*

**I. Federal Rule of Civil Procedure 12(b)(1)**

To bring a suit challenging the disallowance of a refund claim, three jurisdictional prerequisites must be met: the tax at issue must be paid, the taxpayer must have properly filed an administrative claim for the refund with the IRS, and the administrative claim must either be disallowed or not acted upon within six months after it was filed. ***Roberts v. U.S.***, 242 F.3d 1065, 1067 (Fed. Cir. 2001). The United States argues that Region IV failed to meet only the second jurisdictional requirement—filing an administrative claim with the IRS—for its Q2 refund claim, thereby stripping this Court of jurisdiction over that claim [16, pg. 9]. Region IV disputes this, arguing that it has filed an administrative claim for Q2, thereby satisfying all jurisdictional prerequisites. [18, pgs. 11-13].

The United States takes that position that once the IRS paid Region IV its claimed Q2 ERC refund, "the parties were square[,]" and the refund claim from Q2 was extinguished [16, pgs. 9-10]. Thereafter, the IRS disallowed Region IV's claims for Q1, Q2, and Q3 of 2021. [1, Exhibit 2]. The United States argues that after the claims were disallowed, the IRS issued a *new assessment* for Q2 and that Region IV has failed to file an administrative claim that challenges this new assessment. [16, pg. 10]. The "new" Q2 assessment was equal to the amount of the refund that Region IV previously received plus accrued interest. [15, Exhibit 2]. Exhibit 2 to the United States' Motion to Dismiss [15] is the IRS's Form 4340 for Q2 of 2021. Form 4340 is a "certificate of

4

assessments, payments, and other specified matters." [15, Exhibit 2]. On page 1, the Form records that the IRS issued Region IV a refund in the amount of $1,990,593.87—which was the refundable ERC in the amount of $1,661,015.96 plus accrued interest in the amount of $163,774.90 and "prior tax abated" in the amount of $165,803.01. [15, Exhibit 2]. On page 2, the Form states "refundable credit reversed" and records the amount of $1,661,015.96—the amount of the previously allowed ERC refund—and $285,557.07 was identified as assessed interest [15, Exhibit 2]. Page 3 of the Form identified an applied credit of $591.28 [15, Exhibit 2]. Finally, page 4 of the Form records that Region IV had a balance of $1,945,981.75 due—the reversed refund credit plus accrued interest and minus the applied credit. [15, Exhibit 2].

The United States relies on two cases to support its proposition that once the refund was issued to Region IV, the refund claim was extinguished and the new assessment of tax for Q2 requires a new administrative claim prior to bringing suit: *Bilzerian v. United States*, 86 F.3d 1067 (11th Cir. 1996), and *United States v. Wilkes*, 946 F.2d 1143 (5th Cir. 1991). Both cases dealt with a factual scenario where the IRS was attempting to recover an erroneously issued refund. In *Bilzerian*, the plaintiffs were assessed additional income tax after they filed their 1985 tax return. *Bilzerian*, 86 F.3d at 1068. The plaintiffs paid the additional assessed tax, thereby satisfying "all the deficiencies assessed against [them] for 1985." *Id.* Thereafter, the plaintiffs filed an amended return for the 1985 tax year, claiming a refund in the amount of $59,392 as well as a refund "in the amount of $101,337.44 for the interest and penalties they paid on the 1985 deficiency." *Id.* The IRS issued a refund to the plaintiffs for $125,545.35. *Id.* However, it argued that the "refund was issued erroneously as a result of a computer error." *Id.* To recover the erroneously issued refund, the IRS filed suit pursuant to 26 U.S.C. § 7405. *Id.* On appeal, the Court of Appeals for the Eleventh Circuit held that

once a tax liability is paid, no erroneous refund . . . can revive it. The district court correctly determined that once an assessment is paid, it is extinguished and correctly set out that the proper procedure for the IRS to collect an erroneous refund is a refund suit under section 7405 or a new assessment, including a new notice of deficiency.

*Id.* at 1069.

In *Wilkes*, 946 F.2d at 1152, the Court of Appeals for the Fifth Circuit similarly held that "as a taxpayer makes payment against a tax assessment, the assessment is extinguished in the amount paid and cannot be revived by the IRS's giving the taxpayer an unsolicited, erroneous refund." The United States applies the holdings of *Bilzerian* and *Wilkes* to the present case and argues that once the *refund* was issued by the IRS to Region IV for Q2 of 2021, the original assessment was extinguished, as was the administrative claim that Region IV made for the refund. [16, pg.10]. In essence, they argue that Region IV cannot "revive" its administrative claim because the IRS issued a refund for that claim, thereby extinguishing it. [16, pg. 10]. Therefore, the United States submits that Region IV was required to file a new administrative claim for Q2 for this Court to have jurisdiction over the claim. [16, pg. 10]. We disagree.

The "revive" language that the government culls from *Bilzerian* deals with whether the tax liability can be resurrected after an erroneous refund, not whether a contest of the disallowance of the refund is dead after a new assessment. They are not the same thing. In both *Bilzerian* and *Wilkes*, the IRS argued that it did not have to issue a new assessment or notice of deficiency to collect an erroneously issued refund because it had previously assessed the taxpayers some amount for the same tax period—the courts rejected this argument. Furthermore, those cases were not at the same procedural juncture as the present case. The controversies that the courts dealt with in *Bilzerian* and *Wilkes* were ended by the courts telling the IRS that it needed to either file suit or issue a new assessment—which the IRS has already done in this case.

6

The Court finds the present case to be significantly distinguishable from **Bilzerian** and **Wilkes**. Region IV filed its original refund claim for Q2, which was permitted by the IRS with the issuance of a refund check. The IRS subsequently notified Region IV that it was reviewing the Q1, Q2, and Q3 refund claims. The IRS sent Region IV a determination letter stating that the refund claims for Q1, Q2, and Q3 were fully disallowed. [1, Exhibit 2]. Region IV appropriately protested the disallowance [1, Exhibit 8]. The United States attached two letters to Region IV to its Motion to Dismiss, [15, Exhibits 4 &5] which stated that the protests for Q1 and Q3 were denied [15, Exhibit 4] and that Region IV's appeal of the disallowance of the Q2 refund was denied as well [15, Exhibit 5]. Both letters stated that Region IV could file suit to challenge the IRS's determination. [15, Exhibits 4 &5]. Region IV stated that it did not receive these letters but assumed that the appeal for Q2 had been denied because the IRS issued an assessment for the Q2 refund amount. [18, pg. 5]. Region IV administratively protested the disallowance of the three quarters at issue and was denied. Not only was it denied, in its letters of denial, the IRS expressly stated that Region IV could challenge the denials by filing suit—which is exactly what Region IV has done.

To state it plainly, Region IV (1) filed a refund claim, (2) was issued a refund which was later disallowed, (3) appealed the disallowance, (4) was denied on appeal, and (5) then brought this case before this Court. Region IV and the United States are arguing over the same amount of money that Region IV claimed in the original refund claim filed in 2022 (plus the interest which has since accrued). And the IRS acknowledged their right to bring suit in a letter attached to its Motion to Dismiss. Region IV has met the jurisdictional prerequisites for this Court to hear its claims. Requiring Region IV to file a new administrative claim for Q2 when the IRS has already denied an administrative claim for Q2, simply because a new assessment was issued for the very

money at issue in the already denied administrative claim, would—as well as defying the circular logic it would require—be ineffective, a waste of time and, most importantly, not required by law.

The United States also contends that pursuant to the Declaratory Judgment Act and the Anti-Injunction Act, this Court lacks jurisdiction over Region IV's request for "additionally, and alternatively, a judgment that Region IV is entitled to keep the money the IRS previously paid it on Q2 2021, without penalty." [1, pg. 69]. On this much, we can agree. "The DJA allows federal courts to enter declaratory judgments, but it explicitly excluded controversies 'with respect to Federal taxes.'" ***Trevino v. United States***, EP-20-CV-00169-PRM-RFC, 2021 WL 517052, at *3 (W.D. Tex. Feb. 11, 2021) (quoting 28 U.S.C. § 2201(a)); *see also* ***Burton v. United States***, 585 F. Supp. 953, 955 (N.D. Tex. Apr. 9, 1984); ***Harvey v. Internal Revenue Serv.***, 670 F. App'x 198, 200 (5th Cir. 2016) ("The Anti-Injunction Act provides in relevant part that, absent application of a statutory exception, 'no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person . . . .'" (quoting 26 U.S.C. § 7421(a)). Therefore, this Court lacks jurisdiction to enter a declaratory judgment as to Region IV's request that it is entitled to keep the previously issued Q2 refund.

## II. Federal Rule of Civil Procedure 12(b)(6)

The United States argues that Region IV has failed to state a claim and should be dismissed under Rule 12(b)(6) because the complaint is a "shotgun pleading." [16, pg. 15]. "What makes a pleading an objectionable 'shotgun' pleading is the inclusion of irrelevant and unrelated facts not tied to specific causes of action such that the claims made are indeterminate and the defendant's task in defending against them is significantly impaired." ***Sahlein v. Red Oak Capital, Inc.*** No. 3:13-CV-00067-DMB—JMV, 2014 WL 3046477, at *3 (N.D. Miss. July 3, 2014) (quoting ***Martinez v. Nueces Cnty., Tex.***, No. 2:13-cv-178, 2013 WL 6190519, at *4 (S.D. Tex. Nov. 26,

2013)). "Shotgun complaints are subject to dismissal under Rule 12(b)(6)." *Id.* The United States takes issue with the complaint incorporating the factual allegations contained in the first 325 paragraphs. It avers that "Region IV spends approximately 139 [of the paragraphs] listing and describing at least 55 alleged government orders it presumably intends to rely upon." [16, pg. 18]. This, according to the United States, amounts to an impermissible shotgun pleading because Region IV has identified over 50 orders which may or may not have caused Region IV to suspend its business at various times in 2021.[1] Some orders may apply to some of the tax quarters in 2021, while others apply only to one quarter. But without more specificity, the United States argues that Region IV's failure to link specific government orders to the suspension of Region IV's business in each tax quarter at issue results in a failure to plead causation. [16, pg. 19].

The United States relies on *JMP Restaurant, LLC v. United States*, No. 1:24-cv-357, 2026 WL 561147 (E.D. Tenn. Feb. 27, 2026), to support its position that Region IV was required to "plead proximate cause as a necessary element of the ERC. Pleading proximate cause necessarily requires a plaintiff to show how a specific government order caused a specific suspension." [19, pg. 4]. In *JPM*, the district court was faced with a motion for summary judgment, not a motion to dismiss. *Id.* at * 2. The district court was asked to determine whether JPM experienced suspension of its business *due to* government orders. The court held that "'due to' require[d] both factual and proximate causation—meaning that the order must have been the 'but-for' cause and a foreseeable cause of the full or partial shutdown.'" *Id.* at *5. It held that "the causal chain between the orders and the reason for the labor shortage [was] too attenuated to meet the definition of 'due to' because a lack of desire to work and pursue easier incentives [was] the intervening cause of the labor

---

[1] In order to show that it was entitled to the ERCs, Region IV must show that its business was fully or partially suspended due to a government order. *See JPM Rest., LLC v. United States*, No. 1:24-cv-357, 2026 WL 561147, at *4 (E.D. Tenn. Feb. 27, 2026) (quoting Pub. L. No. 116-136, 134 Stat. 281 (2020), §2301(c)(2)(A)).

shortage." *Id.* at *9. The United States argues that the *JPM* court made clear that a plaintiff must plead specific government orders were the but for cause of the business suspension for each specific tax quarter. However, this Court disagrees and finds the reasoning in *Plastic Film, LLC v. United States*, 5:25-cv-20-DCB-LGI, 2026 WL 144343 (S.D. Miss. Jan. 20, 2026), to be more applicable at this stage of the case.

In *Plastic Film*, the district court was determining a motion to dismiss, just like the present case. *Id.* at *1. Furthermore, the United States made the same argument and plaintiffs maintained "that it ha[d] alleged sufficient facts to support its remaining refund claim for quarter three of 2020 and that it [was] not required to plead the specific government orders that led to the partial suspension of Plastic Film." *Id.* The court held that

> Although the Complaint does not identify a specific government order, there is no statutory, regulatory, or binding precedent requiring such specificity at the pleading stage. Whether the referenced orders ultimately substantiate Plaintiff's eligibility for the credit presents a fact-intensive issue appropriately addressed through discovery or at summary judgment. The Court finds Plaintiff's argument persuasive that, given the numerous state, local, and federal orders potentially applicable to the partial suspension of operations, a claimant should not be required to identify a particular order at this stage.

*Id.* at *3. This Court agrees. Region IV is not required to plead with specificity the government orders that caused its alleged suspensions at this stage and the Motion to Dismiss [15] is therefore **DENIED** as to Region IV's failure to state a claim under Rule 12(b)(6).

### *Conclusion*

For the reasons set forth above, the Defendant's Motion to Dismiss [15] is **GRANTED IN PART AND DENIED IN PART**. The Motion to Dismiss [15] is **GRANTED** as to Region IV's request in its complaint [1] for declaratory judgment allowing it to retain without penalty the previously paid refund amount for Q2. In all other aspects the Motion to Dismiss [15] is **DENIED**.

SO ORDERED, this the 1st day of July, 2026.

_____

**UNITED STATES DISTRICT JUDGE**